Thank you, your honors. I'm Sherry Addix for the petitioners Ruslan Dovganyuk and Oksana Shved. Your honors, in this case, the immigration judge determined that if the petitioners had been credible, that they would have established past persecution on account of political opinion. The credibility determination is what's at issue in this case. There are several reasons why that determination is not supported by substantial evidence. The first reason is that what the judge did was to take the petitioners' testimonial confusion and use that to undercut the several corroborating documents that he submitted. This court has held in Zahedi v. INS that a fact finder cannot simply disregard corroborating evidence because an asylum applicant's testimony is confusing. And in fact, the documents that were submitted, several documents, there were three basic groups of documents. One was a group of documents relating to the petitioners' opening of a sausage factory in the Ukraine, the licensing of it, the inspection of it, et cetera, each with dates. And the other two documents were medical certificates, which were obtained in the Ukraine. One was for Mr. Dovganyuk himself, showing that he had suffered trauma to the left side of his body, to his head, and a concussion, and that he was hospitalized for four days in May of 2001. The second one was also a hospital certificate from his wife, Oksana, which showed that she had suffered a vaginal tear, which the hospital attributed to her rape, and that was dated June 17, 2001. Those documents, particularly actually the documents relating to the opening of the sausage factory, clear up the majority of the confusion that the petitioners suffered at his first hearing. However, there were, in fact, two real problems which I think the IJ focuses on. One you've not directly talked about, and that's the omission of the extent of his journalism activities. It doesn't seem to me that the documents you've talked about really help too much with that, because the first time he ever speaks about any journalism activities is his second hearing, and he doesn't really mention what he's really done in the past. And yet, at closing argument, it seems that he makes it the center of his asylum claim that these were his problems. Actually, Your Honor, the issue of the journalism activities is separate from the basis of his claim. His claim was always that he was being persecuted because he had made complaints to the regional authorities. These were written complaints directly to the authorities, not in newspapers. The inclusion of the journalism activities toward the end of the hearings was in order to be complete. In fact, he said that he didn't even see the significance of those writings until talking with his attorney just before the hearing. It really was not the center of his case. In fact, the IJ- Well, it didn't really seem like that at closing argument when they really made that the issue, the center, it seemed, of their argument on asylum. I don't think that they did. I think that the judge really made that the center of his determination, in fact, exaggerated the importance, saying that the respondent was some kind of journalist who was a crusader and he was writing these articles with stinging barbs against the government. And that's not what the petitioner had stated in his testimony. He said that he sometimes contributed articles to the opposition newspaper. And, you know, from time to time. But the bulk of his testimony was all about how he was complaining about the authorities to his workers and to his labor union and that he had written complaints to the regional authorities and that the things that had happened to him happened because of those complaints, not because of anything that he wrote in a newspaper. Well, let's- Can I-could I just maybe help by being-referring to the argument that I suspect we're all concerned about here? I'm looking at AR-242 to 243. And in the-I think this is his counsel, Ms. Edwards? Was she the counsel? Yes, she was the counsel. Okay, so she's saying, Your Honor, I believe it is a valid claim. He has testified with sincerity and specificity as to a number of events that occurred in Ukraine where he was harmed severely, received lifelong injuries, and had to flee Ukraine due to his political involvement in the opposition group. And later, speaking of his mind and criticizing the local authorities, as well as publishing his articles, voicing his views in the local newspaper, Your Honor, I believe that his testimony is consistent with the pattern and practice in Ukraine where the government of Kushman is persistently harassing and imprisoning and torturing members of the opposition political groups as well as journalists. And then he-now, you're saying that the journalism wasn't his claim. It was only incidental, but buried in-as I'm hearing your argument today, the one thing that resonates is criticizing the local authorities. But it sounded as if the journalistic status had been elevated by the time of argument into being more than just an incidental aspect that counsel, at least, was hanging her hat on back. Counsel may have been hanging her hat on that, but honestly what the respondent was testifying to was written complaints that he made to the authorities. And when you read the testimony of the respondent, the journalistic activities really are-they're secondary. They're not the primary reason. In fact, he testifies that he was involved in submitting those articles from the time that he joined the party in 1993 up until the time that he-until he left from time to time. This doesn't seem to hold together to me somehow because you're saying that private complaints that he made are the basis for his claim and yet-and that writing letters publicly opposing the government and what was happening in the government are not relevant or are not-are just minor. And that seems a very odd position to be taking in the first place because it's sort of hard to say that complaints privately that he makes compel a finding that he was-that this was all based on political grounds. So if we were kind of-can you help us out here? Well, he doesn't- That's really the problem, isn't it? I'm-I don't-I don't agree with that exactly. I mean, he doesn't-there isn't a lot of testimony on it. And, you know, he does say that he was submitting it. He also talks about his activities back as far as 1995 when he was attacked based on his political activities. But that was right in the record from the very beginning. He- If-I don't mean to interrupt you if you've got more to say. Well, if that's the way you would respond to that question, then let's go back to the other question which the documents may have some relevance to. But on direct, he testifies and his application is consistent that he doesn't suffer any harm from August of 1995 until May of 2001. And then he comes back and says, well, I did have the police that were demanding free products and they beat me in December of 2000. He was confronted with that testimony and then he says, well, that was only a small incident and I'm not sure they-or a policeman. I do think I was beaten by a gun. Now, how do the documents help with that problem? The documents don't cover that problem, honestly. He doesn't have any documents to prove that that happened one way or the other. So why is that not the inconsistency that can be supported by substantial evidence going directly to the heart of the claim? The judge never specified which incidents he had a problem with. He said overall problems with confusion with dates and events. And we don't know which of these incidents that I.J. had a particular problem with. But I would say that the explanation that he gave is consistent with the testimony or the explanation that he gave does make sense. It was a minor incident compared to the other two which are documented. You have used your time. Thank you, Your Honors. Good morning, Your Honors. Nyree Simone on behalf of the government, Attorney General Eric Holder. The agency's adverse credibility finding was based on specific and cogent reasons that led to Petitioner's heart of his claim. Specifically, the I.J. recently found, based on the record, that he had difficulty recalling dates and providing the sequence of events concerning the harm that he suffered in the Ukraine. But only when he was presented with these inconsistencies on cross-examination. As the I.J. noted on direct, he could give a good testimony. He could recall dates. However, when he was presented with an inconsistency, he started to, as he claimed, experience a memory lapse and could not explain to the judge why this event he claimed in his affidavit with the assignment application was a major event, yet now was a small incident to him. I'd like to direct the Court's attention to the case that Petitioner seems to be relying on as support for the documentary evidence, Zahedi. I believe that case can definitely be distinguished here. The Court found there that the documentary evidence independently established objective component of the claim in a well-founded fear of future persecution because there the Petitioner's name was in the documents. They specified the political crime. And then it also demonstrated that the authorities were actively seeking to arrest and try that person for their political activities. Here we don't have any evidence of that sort. Therefore, when the Court reasonably looked at the evidence, they said, no, that established the objective well-founded fear because it has all this information contained in it. Here we have a medical record that says he experienced some injuries, and then we have proof that he had a sausage factory, which he testified to that he did. So, again, it doesn't cure the inconsistencies or the major omission, which the Court had a problem with in his testimony. It doesn't bolster his claim in any way. So using that case doesn't really help Petitioner's case in here. I thought the point of the medical evidence about his mental condition was that it explains his confusion. Correct. And even taking that, and I hope the Court doesn't hold this against me, it's not the most flawless IJ decision. I agree with that. And even taking that, saying that, you know, the confusion of dates and events, even if you can't hold that as being compelling, definitely the omission of the continued activity with those, I believe it's the Ruch party, that's compelling evidence based on the record that Petitioner was not credible there. So you're agreeing then that the IJ really didn't give a very good explanation of each one of these inconsistencies with dates? No, I believe that, and I believe that his point was that, overall, the testimony just seemed confused and out of sorts. And, you know, this Court has said that the deference can be given to an IJ and they're in the best position to discern the trustworthiness of a Petitioner's testimony. But taking that together with the fact that he had a major omission, which the IJ in two parts of his decision points out on page 86 and then 92 to 93, that, you know, this whole information about writing for the free newspaper, free voice newspaper, and providing 50 articles that were circulated, that was a major omission and even gave lists of why it went to the heart of the claim, saying, you know, the newspaper was supported by the opposition party, it was widely published, it openly criticized the government. This was the party that Petitioner was a member of. Thus, it goes to the heart of the claim. Then he goes on to say that omission was also supported by another inconsistency, which was that he first claimed he seized all activity with the party. This is on page 219. Later, he testified that he was a journalist until he left the Ukraine. So taking that together, that's a major omission and major inconsistency contained. Well, it is if we assume that, as counsel argued it to the IJ, but counsel today is saying, well, that's counsel's spin on it, and one can understand what counsel might have, in light of our jurisprudence and the board's jurisprudence, tried to emphasize that aspect. But his own testimony, it is true, does not make a big deal of it. He simply talks about writing poems and these articles. And his initial testimony had focused on this retribution against him. My takeaway from the case is that he and his wife did suffer physical injuries, and my impression was that the question was whether it was politically motivated or it was retribution by the Ukrainian mafia and the like, and whether there was a nexus there. Right. And counsel could see the relevance of the journalistic writings. I'm not clear that he did, that it was he out of his mouth making a big deal of it. So what do we do with that? Well, Your Honors, I mean, his counsel is there to represent him. No, but, well. The burden of proof is on Petitioner to. But the point, let me clarify. We're saying he didn't put it in his application. Right. Okay, because he didn't think it was that big a deal. He was more focused on what he. Now, counsel comes along later, and then he gets hung out to dry because a later counsel decides he should have put that in. But, you know, that wasn't his state of mind. Well, I mean, I could agree with that statement or that reasoning, except for the fact that he not only didn't talk about it in his first hearing, he left it out of his first affidavit and the second affidavit, which filled in the gaps that he had left out before. I mean, what do we do with that? I mean, if he's consistently leaving out information and he has the time and the opportunity consistently to cure it in the record. I mean, this was a lenient hearing. I mean, I have to say, not the best IJ decision, but the IJ, both IJs were very understanding and trying to get to the bottom of his case and kept providing opportunities to explain the inconsistencies. And if he, up to the point where he's given another opportunity to provide a three-page affidavit and clears up some of the other omissions, doesn't add this into his testimony, I think that the IJ's decision is supported by substantial evidence here. Is he counseled on his second? Yes, yes. On his second, the gap filler? Yes. Are there any further questions? No. I just ask the PFR be denied. Thank you, Your Honor. Thank you, counsel. Thank you. The matter just argued is submitted for decision.
judges: Schroeder, Fisher, Smith N. R.